UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ARIEL DAVIS,

                Plaintiff,

                                        **MEMORANDUM and**
                                        **ORDER**

        -against-                                14-CV-903 (JMA)(GRB)

TOWN OF HEMPSTEAD
and MARK BONILLA, individually,

                Defendants.

------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

      This action involves claims arising from the sexual misconduct by defendant Mark Bonilla against plaintiff Ariel Davis, who worked on Bonilla's staff during the time he served as the elected Town Clerk for the defendant Town of Hempstead (the "Town"). Currently pending before the Court is a motion for summary judgment by the Town, along with a cross-motion for partial summary judgment by plaintiff, which motions are before the undersigned for all purposes upon consent of the parties. DE 73-6. Bonilla's reprehensible conduct, which resulted in his criminal conviction, is not contested for the purposes of the Town's motion.[1] For the reasons set forth herein, the Town's motion for summary judgment is granted as to all federal claims, plaintiff's cross-motion is denied, and the remaining state claims are dismissed in favor of the exercise of jurisdiction by the state court. Moreover, in an effort to efficiently resolve this matter,

---

[1] For avoidance of doubt, the Court is not being asked to pass on the impropriety of Bonilla's actions, or whether plaintiff should be without remedy. Rather, the principal issue before this Court on summary judgment is whether, the Town of Hempstead, which had no disciplinary control over Bonilla and was, at all relevant times, unaware of his conduct, can be held liable for that conduct under the legal theories asserted.

the undersigned recommends, *sua sponte,* that the federal claims and state claims against Bonilla be dismissed, again with the understanding that the state claims may be refiled in state court.

**PROCEDURAL HISTORY**

This action began with the filing of a complaint on February 11, 2014. In that complaint, plaintiff asserts five causes of action against the defendant Town and defendant Bonilla: (1) sexual harassment and discrimination under Title VII, 42 U.S.C. §2000e;[2] (2) retaliation under Title VII; (3) hostile work environment and sexual harassment under New York State Human Rights Law ("NYSHRL") §290; (4) assault and battery and (5) intentional infliction of emotional distress. DE 1. The Town filed an answer with a cross-claim for indemnification against Bonilla. DE 11. Bonilla failed to answer the complaint, but no effort to seek a default judgement appears on the record. After efforts to voluntarily resolve the dispute failed, a lengthy—and not uneventful— period of discovery followed under the supervision of the undersigned.

In June 2018, the Town filed its motion for summary judgment, contending that the Town cannot be held liable for what it concedes is Bonilla's "appalling conduct."[3] DE 61 at 12. Two months *earlier*, plaintiff had filed her opposition to the Town's motion and a cross-motion for

---

[2] For the avoidance of doubt, while counsel for plaintiff *nominally* cites 42 U.S.C. § 1983 in support of her cause of action for sexual harassment and discrimination, plaintiff explicitly predicates any section 1983 violation *entirely* upon a violation of Title VII. *See* DE 1 at ¶¶ 70–77; DE 61 at 24 (noting that the alleged violation of the Equal Protection Clause is "demonstrated by proof of a Title VII violation"). Thus, as alleged, Plaintiff's disentitlement to Title VII relief proves fatal to her purported reliance on section 1983.

[3] The briefs filed in support of and in opposition to the motions, each weighing in at more than 35 pages, far exceed those customarily permitted by the rules of the undersigned and those of Judge Azrack. The parties may have sought for these oversized filings, but given the cluttered record of this case, searching the four-year long docket for the answer to this inquiry is a game not worth the candle. However, the oversized briefs filed demonstrate the principle that longer is not always more informative, and puts one in mind of Ben Franklin's observation (erroneously attributed to Mark Twain) that "I have already made this paper too long, for which I must crave pardon, not having now time to make it shorter." *See* https://quoteinvestigator.com.

2

partial summary judgment, essentially seeking a declaration that she was an employee of the Town under New York Civil Service Laws. DE 56-3 at 21. As far as the Court can discern, plaintiff does not seek summary judgment as to defendant Bonilla. *See generally id.* In her filings, plaintiff represents that "[i]ssue has been joined and the discovery is complete." DE 56-3 at 4. To further complicate this already complex procedural history, Bonilla filed a memorandum of law and supporting papers purporting to *oppose* the Town's motion for summary judgment, but not seeking summary judgment on his own behalf. DE 65.[4] This opinion follows.

## LEGAL STANDARD

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor,* 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

Of course, under Local Rule 56.1, a party seeking summary judgment must provide a statement of undisputed material facts. As the Second Circuit has observed:

> Local Rule 56.1 was adopted to aid the courts in deciding summary judgment motions by quickly identifying disputed material facts. The Rule requires that any motion for summary judgment be accompanied by a list of the "material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule 56.1(a). The requirement is strict; failure to submit a Rule 56.1 statement with a motion for summary judgment may result in the motion's denial. *Id.*

*T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417–18 (2d Cir. 2009). The Circuit has repeatedly reiterated this admonition:

> Local Rule 56.1 requires a party moving for summary judgment to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no

---

[4] Bonilla's filings seem to suggest that further discovery is required in this matter. *See generally* DE 65. To the extent this application could be viewed as a motion for further discovery in this case, it is unequivocally denied as untimely, improperly filed and substantively meritless.

3

> genuine issue to be tried" and requires that each numbered paragraph be supported "by citation to evidence" in the record. Local Rule 56.1(a), (d). It further puts litigants on notice that "[f]ailure to submit such a statement may constitute grounds for denial of the motion." Local Rule 56.1(a).

*Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 17 (2d Cir. 2015) (affirming district court's denial of summary judgment motion based upon movant's filing of a 56.1 statement without adequate citation); *see Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (holding that "unsupported assertions [in a Local Rule 56.1 statement] must ... be disregarded"); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court ... is not required to consider what the parties fail to point out in their Local Rule 56.1 statements"); *see also Antwi v. Health & Human Sys. (Centers) F.E.G.S.*, No. 13 CIV. 835 (ER) (FM), 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15, 2014) ("The failure to file a Rule 56.1 Statement is, on its own, grounds for denial of a motion for summary judgment"); *Purisima v. Tiffany Entm't*, No. 09 Civ. 3502 (NGG) (LB), 2014 WL 3828291, at *1 (E.D.N.Y. June 20, 2014), *adopted by*, 2014 WL 3828376 (E.D.N.Y. Aug. 4, 2014) ("As courts in this district have observed repeatedly, the failure to file a Rule 56. 1 Statement is grounds for dismissal of a motion for summary judgment."); *MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*, 435 F. Supp. 2d 285, 304–05 (S.D.N.Y. 2006) (denying summary judgment motion where movant failed to submit required 56.1 statement). At the same time district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73.

Notwithstanding these well-established principles, on its cross-motion for partial summary judgment, plaintiff's counsel filed a 56.1 statement of sorts, which contains the following curious qualifier:

> Plaintiff . . . by her counsel . . . submits candidly that this matter is factually intensive and does not lend itself to making assertions of material "undisputed facts."

DE 56-1 at 1. While this Court is a proponent of candid admissions, a "factually intensive" matter that "does not lend itself to making assertions of material 'undisputed facts'" would seem ineligible for a grant of summary judgment. Hence, plaintiff's motion affirmatively seeking summary judgment seems misplaced, but the Court will review the matter nonetheless.

Similarly, to oppose a motion for summary judgment, a party is required by the Court's Local Rules to submit a Statement of Material Facts upon which it contends there "exists a genuine issue to be tried" and "each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." L. Civ. R. 56(d); *Tuccio v. FJC Sec. Servs., Inc.*, No. CV 12-5506(JFB)(GRB), 2014 WL 4438084, at *5 (E.D.N.Y. Aug. 18, 2014), *adopted by*, 2014 WL 4438469 (E.D.N.Y. Sept. 8, 2014), *appeal dismissed*, (2d Cir. Mar. 18, 2015). A party may not rest on a mere denial without citing supporting admissible evidence. "Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts." *Covelli v. Nat'l Fuel Gas Distrib. Corp.*, No. 99-cv-0500E(M), 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001)), *aff'd*, *Covelli v. Nat'l Gas Distrib. Corp.*, 49 F. App'x 356 (2d Cir. 2002).

Upon the failure to properly controvert a movant's statement of material fact, such statement "will be deemed admitted for the purposes of the motion." L. Civ. R. 56.1(c); *D.N. ex rel. D.N. v. Bd. of Educ. of Ctr. Moriches Union Free Sch. Dist.*, No. CV 14-99(GRB), 2015 WL 5822226, at *3 n.3 (E.D.N.Y. Sept. 28, 2015); *see also Edmonds v. Seavey*, No. 08 CIV. 5646 (HB), 2009 WL 2949757, at *1 n.2 (S.D.N.Y. Sept. 15, 2009), *aff'd*, 379 F. App'x 62 (2d Cir.

5

2010); *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc.*, No. 06 Civ. 2142(GEL), 2007 WL 4302514, at *5 (S.D.N.Y. Dec. 7, 2007). Again, district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules," *Holtz*, 258 F.3d at 73, and the Court may not rely solely upon the failure to controvert assertions made in a Rule 56.1 statement if those assertions are not supported in the record. *See Giannullo*, 322 F.3d at 140 ("[E]ven though plaintiff's Rule 56.1 counter-statement failed to specifically controvert these assertions, the unsupported assertions must nonetheless be disregarded and the record independently reviewed."); *but see Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (distinguishing *Giannullo* and upholding default where "each statement of proposed undisputed facts was supported by a citation to the record sufficient to prove each such fact").

Plaintiff's counsel has opted to ignore the mandates of Rule 56.1, having failed to submit a counterstatement in response to the Town's 56.1 statement. Thus, plaintiff has effectively conceded those assertions which are supported by the evidence cited. While the Court has reviewed the evidence to ensure that the assertions are, in fact, supported by evidence of record, plaintiff has effectively admitted all of the documented factual assertions in the Town's 56.1 statement.

## UNDISPUTED FACTS

As drawn from the undisputed assertions in the Town's 56.1 statement, and based upon the Court's review of the evidence submitted, the material undisputed facts include the following:

Plaintiff has been employed by the Town since June 15, 2009 and is presently a full-time employee for the Town's Department of Water. DE 60 ¶ 1, 38. Plaintiff was first employed by the Town in the Office of the Town Clerk when she became a summer clerical aide in the Marriages Department of the Town Clerk's Office. *Id.* at ¶ 40. At some point after June 2009, Plaintiff

6

began working directly for defendant Bonilla, the elected Town Clerk, in his executive office. *Id.* at ¶ 41.

Bonilla, an elected official, by law was not subject to discipline by the Town. *Id.* at ¶ 147. In his position as Town Clerk, Bonilla was the appointing authority for employees working in his department. *Id.* at ¶ 18. While the hiring of full-time employees was subject to Town Board approval, and such employees are subject to supervision by the Town, the Town Clerk has full control over part-time staff. *Id.* at ¶¶ 20-24. Employees working in Bonilla's office did not take civil service exams. *Id.* at ¶ 32.

In 2011, Plaintiff began to work as a member of Bonilla's executive staff as Bonilla's assistant. *Id.* at ¶¶ 44–45. Bonilla advised Plaintiff that she would receive a pay increase as a result of working in his executive office as his executive staff members all earned a certain salary. *Id.* at ¶ 63. Bonilla requested payroll increases for Plaintiff in order to bring her salary on par with the other employees in his executive office, and she, in fact received a $7.00 per hour raise when she started in Bonilla's executive office, and another $5.00 per hour raise after one year. *Id.* at ¶¶ 63–66. In rationalizing raise requests for plaintiff in 2011 and 2012, Bonilla asserted:

> Ariel Davis works in my executive suite. Since her transfer into my office, Ariel has undertaken many responsibilities and handles the everyday operations of my office. Especially, as part of my executive staff, Ariel is deserving of this salary increase due to the high influx of constituent requests/concerns that she helps resolve, along with drafting letters and providing support to all other administrative tasks.

*Id.* at ¶ 68.

As a member of Bonilla's executive staff, according to her testimony, plaintiff was required to be "part of his team," "help out with the letters" to constituents, meet people, and "put him before [her] family, [her] boyfriend and [her] friends." *Id.* at ¶ 48. She was required to answer the phones in the executive office and "help constituents who had problems." *Id.* at ¶ 50. In addition,

7

she attended over 30 Town events alongside Bonilla, including Passport Day, political events, and "events for Kate Murray," another political candidate, where she would assist constituents with fingerprinting, take photographs, fill out forms, and have discussions to evaluate issues with which they needed assistance. *Id.* at ¶ 51, 53. Bonilla had made the decision to require plaintiff to travel with him to and from these events. *Id.* at ¶ 52. According to her testimony, Bonilla told plaintiff that she had to "sell myself and be available to [his] constituents," sell "the whole Town Hall idea," "have a bigger smile on [her] face," be "over [sic] enthusiastic" to be with him in front of constituents, and "stroke my constituents." *Id.* at ¶ 55. Plaintiff assisted Bonilla with his campaigning and "political stuff," including dropping off ballots, accompanying him to political events, and working on his campaign during Town time and after hours. *Id.* at ¶ 56.

Plaintiff would suggest applicants to fill positions within Bonilla's executive office, though Bonilla decided who filled any open positions. *Id.* at ¶ 59. Bonilla often discussed other employees from the Clerk's office with plaintiff, including his evaluation of them for wage increases, promotions, and transfers. *Id.* at ¶ 60.

Unfortunately, Bonilla acted flagrantly and improperly in his dealings with the plaintiff: commenting on plaintiff's attire and touching her inappropriately against her will, while scrupulously avoiding the presence of witnesses while doing so. *Id.* at ¶¶ 73–75, 79, 82, 83. In one or more instances, plaintiff captured Bonilla's inappropriate conduct on video using her cell phone, but neither shared these recordings with Town officials, nor reported the problems to Town officials while the situation was ongoing. *Id.* at ¶¶ 81, 83, 84, 87, 105. Plaintiff's failure to complain was based in part on the fact that she believed he had the power to fire her. *Id.* at ¶ 89. She had, however, prior to working for Bonilla, received sexual harassment training from the Town, received a copy of its Anti-Discrimination Policy, and was aware of how to raise the issue. *Id.* at ¶¶ 13–14, 90. Plaintiff was aware that, under that policy, she had a responsibility to report

any harassing or discriminatory conduct. *Id.* at ¶ 16.[5]

Eventually, plaintiff did speak about Bonilla's conduct with another victim named Elissa Smith, but neither made a complaint at that time. *Id.* at ¶ 102. Around August 2012, the Town began an effort, for unrelated budget purposes, to move certain employees among departments. *Id.* at ¶ 115. Because plaintiff expressed interest in a transfer, she was offered a full-time position in another department. *Id.* at ¶¶ 115–19. In a meeting with the Town's Department of Human Resources, plaintiff complained about Bonilla's conduct, the first such complaint the Town received from plaintiff. *Id.* at ¶¶ 121–23. Following the meeting, plaintiff was not required to return to the Town Clerk's Office and she testified that she was satisfied with the outcome of the meeting. *Id.* at ¶¶ 129–34. The Town expedited the plaintiff's transfer to a full-time position with benefits in the Water Department. *Id.* at ¶¶ 132–36. Plaintiff had no further contact with Bonilla thereafter. *Id.* at ¶ 139.

The Town Attorney's Office launched an investigation of plaintiff's complaint, and the matter was referred to the District Attorney's Office. *Id.* at ¶¶ 146, 149. Bonilla was arrested on September 21, 2012. *Id.* at ¶ 150. He was convicted of Official Misconduct and terminated by the Governor. *Id.* at ¶ 154.

---

[5] For his part, Bonilla does not deny any of his reprehensible conduct that the Town has conceded on this motion. Rather, his counsel argues—without citation to law or factual support—that the Town should not be awarded summary judgment because "the TOWN OF HEMPSTEAD did not exercise reasonable care in ensuring that MARK BONILLA attended a anti-discrimination program and/or to properly train MARK BONILLA." DE 65 at 15 (grammatical errors as original). So, the thought is that the Town should have ensured that Bonilla receive training so he would know not engage in the type of egregious conduct with a young, female employee as described herein. Factually, of course, the record is replete with evidence demonstrating his efforts to avoid witnesses to the conduct, suppress plaintiff's resistance and cover up his actions, which gives rise to the obvious inference that he well knew such activity was prohibited by, among other things, law, social mores and common decency. In rejecting this argument, as instructed by the Supreme Court in a slightly different context, the undersigned needs no further citation than "its judicial experience and common sense." *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

## DISCUSSION

*1. Title VII Claims*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. makes it unlawful to discriminate against any employee with respect to her compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Specifically excluded from this definition of employee, though, is the following:

> Any person elected to public office in any state or political subdivision of any State by the qualified voters thereof, any person chosen by such officer to be on such officer's personal staff . . .

42 U.S.C. § 2000e(f). This subsection exempts four categories of individuals from the definition of employee under Title VII, including, as relevant here, "the individuals chosen by [an elected] officer to be members of his or her "personal staff." *Bland v. New York*, 263 F. Supp. 2d 526, 536 (E.D.N.Y. 2003). While state law may assist in defining the job responsibilities and other features of the position, ultimately whether a party falls within this exemption is a question of federal law. *Id.*

The Second Circuit has not directly considered this exemption, though has considered some related matters, and several district courts within the Circuit and other appellate courts have explored its applicability. *Id.*; *cf. Butler v. N.Y. State Dep't of Law*, 211 F.3d 739, 747 (2d Cir. 2000) ("This Court has examined the legislative history of Title VII to construe the definition of 'employee' under the ADEA"). The district courts have employed a non-exhaustive, six factor test to evaluate defenses raised under this statutory language:

> (1) whether the elected official has plenary powers of appointment and

> removal, (2) whether the person in the position at issue is personally accountable to only the elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Croci v. Town of Haverstraw,* 175 F. Supp. 3d 373, 380 (S.D.N.Y. 2016*); Bland,* 263 F. Supp. 2d at 539; *Teneyuca v. Bexar Cnty.*, 767 F.2d 148, 151 (5th Cir.1985). Although this fact intensive inquiry may be difficult to resolve on a motion, "[n]evertheless, in appropriate circumstances, a court may still make the determination upon a motion to dismiss or a summary judgment motion." *Croci*, 175 F. Supp. 3d at 380–81. Notably, this test is not dissimilar from the Second Circuit's application of the policymaker exemption under the ADEA. *See Butler*, 211 F.3d at 747 ("In *Vermont,* we concluded that in order to be considered an appointee on the policymaking level an individual must have been appointed by an elected official and must work closely with the appointing authority").

And, in this case, the undisputed facts satisfy nearly every element of this test. It is undisputed that, Bonilla appointed the plaintiff, and had exclusive supervisory powers over her and her position. DE 60 at ¶ 18. During her time on Bonilla's executive staff, she clearly represented Bonilla with constituents, both in written correspondence and during interactions at various events. *Id.* at ¶¶ 48–52. While the question of the "level" of plaintiff's position within the Town could be debated, the "intimacy of the working relationship" unequivocally weighs in favor of the applicability of the exclusion.

Significantly, in *Bland*, one of the leading decisions on this issue, Judge Korman determined that an elected judge's "confidential secretary," who charged misconduct similar to that alleged in the instant case, fell within the personal staff exception, finding as follows:

> An examination of the six factors set out in *Teneyuca* under the present circumstances lends further support to the conclusion that Ms. Bland was a member of Justice Shaw's "personal staff." Justice Shaw had plenary statutory authority to appoint plaintiff or remove her from the secretarial position at issue. Ms. Bland was wholly and solely responsible to Justice Shaw in the performance of her job duties, who had complete control over the position and her responsibilities. Moreover, Ms. Bland was personally supervised by Shaw without any intermediaries. In addition, by answering Justice Shaw's phone and attending his chambers, plaintiff represented Justice Shaw in the eyes of the public. Under these circumstances, plaintiff possessed an intimate and sensitive working relationship with Justice Shaw.

*Bland*, 263 F. Supp. 2d at 540. Much the same can be said of the plaintiff in the instant case.

Plaintiff's argument that her position did not encompass "high-level" or "policymaking" functions proves unavailing. Indeed, this precise argument was rejected by Judge Korman's careful analysis in *Bland*:

> If, as plaintiff urges, some kind of active role in the policy making functions of the office were necessary to render a staff member exempt under the statute, then the "policy making" and "personal staff" exemptions would be collapsed into a single category, rendering the separate "personal staff" exemption surplusage. *See Tranello v. Frey*, 962 F.2d at 249 (explicitly reading each clause of similar statute as separate and distinct categories of exemption in construing "policy making" exemption under 2000e(f)); *Gregory v. Ashcroft,* 501 U.S. at 465, 111 S.Ct. 2395 (looking separately at each category of exemption in construing statute). Indeed, in *Nichols v, Hurley*, 921 F.2d 1101 (10th Cir.1990), a split panel of the Tenth Circuit explicitly declined to adopt the Fourth Circuit's reasoning. *Nichols*, 921 F.2d at 1108. The Tenth Circuit concluded that the Fourth Circuit had considered factors that generally go to the other exceptions to the definition of employee, not the personal staff exception. "[A] person can be a member of an elected official's personal staff and not be either a policymaker or an immediate adviser with respect to the constitutional and legal powers of the elected official." *Id.*

*Bland,* 263 F. Supp. 2d at 542. *Bland* similarly dispatches plaintiff's argument that the exemption is inapplicable because plaintiff's appointment and salary increases had to be approved by other Town officials:

> [T]he fact that plaintiff was not on Justice Shaw's personal payroll and

> that he did not control her pay or benefits does not necessarily lead to the conclusion that she was not on his "personal staff." *See Manzi v. DiCarlo,* 62 F.Supp.2d 780, 790. If it did, then any elected official's personal staff member, chosen by that official, serving at his pleasure, whose salary and employment nonetheless ultimately stemmed from a governmental authority could fall outside the exemption regardless of the intimacy of the working relationship. This would effectively eradicate this entire category of exemption, since few elected officials' personal staff members are wholly administered and paid for personally. This cannot be correct. Rather, this approach to the problem is better viewed as another way of looking at the personal nature of the appointment and the intimate and sensitive nature of the job. In a case like the present one, where it is clear that there is an exclusive working relationship and sole personal accountability to the elected official, the issue should be of less importance.

*Id.* at 543–444.

Based on these authorities, and the undisputed facts, plaintiff, as a member of the personal staff of an elected official, falls outside the definition of employee contained in Title VII. Therefore, the Town is entitled to summary judgment as to plaintiffs' claims under Title VII.

2. *Plaintiff's State Law Claims*

The Town argues that plaintiff's state law claims are barred by the failure to file a timely notice of claim consistent with N.Y. General Municipal Law §50e and §50i. Those provisions require the filing of a notice of claim as a condition precedent to the commencement of a tort action against a municipality "within 90 days after the claim arises." N.Y. Gen. Mun. Law §50e(1)(a) (McKinney). It is undisputed that plaintiff met with the Town's HR representative on August 16, 2012, after which she was no longer required to work for Bonilla. DE 60 ¶¶ 119–122. Clearly, her claim accrued prior to this time. Nonetheless, she did not file a notice of claim until November 29, 2012, thus the notice of claim was not timely filed. *See id.* at ¶ 56 (citing DE 1-2 at 9). "Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." *Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F.

13

Supp. 2d 196, 216 (E.D.N.Y. 2013) (*quoting Dingle v. City of N.Y.*, 728 F.Supp.2d 332, 348–49 (S.D.N.Y. 2010)). Thus, this failure is dispositive of plaintiff's tort claims.

"However, as the plain language of the statute makes clear, this provision applies to tort actions, not to discrimination claims brought under . . . the New York Executive Law. *Barella v. Vill. of Freeport*, 16 F. Supp. 3d 144, 156 (E.D.N.Y. 2014). Thus, this argument is unavailing as to plaintiff's discrimination claim under the NYSHRL. And while the Town purports to make an argument for summary judgment as to the NYSHRL claim, despite the massive filings on this motion, the Town has not articulated a cognizable argument as to the NYSHRL claim, which is discussed further below.

3. *Claims Under the NYSHRL*

As noted, the Town's primary prevailing argument on this motion relates to the definition of "employee" that exempts plaintiff from recovery against the Town under Title VII. The Town does not appear to argue, nor does the case law suggest, that this definition excludes coverage under the NYSHRL. Though not discussed herein, the Town forcefully argues that it is entitled to summary judgment based upon the *Faragher/Ellerth* defense—essentially a defense to federal employment discrimination claims arising from the existence of a robust anti-harassment policy and the failure of plaintiff to avail herself of protective policies. *Faragher v. Boca Raton,* 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). At least implicitly, the Town argues that its entitlement to summary judgment as to the NYSHRL claim emanates from the applicability of this defense, and the Town has made a colorable factual showing to support the defense.

However, whether the defense applies to NYSHRL claims remains an unsettled question under state law. *Prophete-Camille v. Stericycle, Inc.*, 14-CV-7268 (JS) (AKT), 2017 WL 570769, at *10 (E.D.N.Y. 2017) (dicta); *Gorman v. Covidien, LLC,* 146 F. Supp. 3d 509, 521 (S.D.N.Y.

14

2015) ("it is unclear that the Faragher/Ellerth defense applies to claims brought under the NYSHRL"); *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528 (MKB), 2014 WL 4773975, at *29 n.25 (E.D.N.Y. 2014) ("Whether the Faragher/Ellerth defense is available to claims brought under the NYSHRL is not a fully-settled question"). As Judge Brodie noted, the New York Court of Appeals has twice suggested that such a defense might be available, but has not expressly held that it does, in fact, apply. *Setelius*, 2014 WL 4773975, at *29, n.5 (citing *Zakrzewska v. New School,* 14 N.Y.3d 469, 481 (2010), *and Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 312 (2004)). More importantly, in an unpublished summary order, the Second Circuit held that "because New York State law is not clear as to the application of this defense to cases under the Executive Law," where, as here "all of [plaintiff's] federal claims fail, we believe the proper procedure is to dismiss the state law claims without prejudice to their being brought in state court." *McPherson v. NYP Holdings, Inc.*, 227 F. App'x 51, 53–54 (2d Cir. 2007).

That would appear to be the appropriate course in the instant case for two reasons. Section 1367 of Title 28, United States Code, provides for the exercise of supplemental jurisdiction over state law claims which form part of the same case or controversy under Article III of the United States Constitution, which constitutes "a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). As such, the statute explicitly affords courts discretion to decline to exercise such jurisdiction in several circumstances, two of which are relevant here. First, supplemental jurisdiction may be declined where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). As discussed, the applicability of the *Faragher/Ellerth* defense to NYSHRL claims appears to raise such an issue. Thus, a dismissal in favor of refiling in state court seems warranted. *See McPherson*, 227 F. App'x at 53–54. Second, the statute also provides for declination where, as here, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In making this determination, the

15

Second Circuit has observed, district courts are:

> aided by the Supreme Court's additional guidance in *Cohill* that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." 484 U.S. at 350 n. 7, 108 S.Ct. 614; *see also Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.... [I]f the federal law claims are dismissed before trial ... the state claims should be dismissed as well.").

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). Here, where the gravamen of the Town's defense to the remaining NYSHRL claim lies within the *Faragher/Ellerth* defense, a matter which raises an unsettled question of state law, and there are no viable federal claims against any defendant, the "values of judicial economy, convenience, fairness, and comity," expressed in *Cohill* all weigh in favor of a dismissal of the remaining state law claims against the Town in favor of a proceeding in state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

## REPORT AND RECOMMENDATION REGARDING CLAIMS AGAINST BONILLA

Arguably, the claims against Bonilla are before the undersigned as an ancillary matter to the cross-motions for summary judgment by plaintiff and the Town. However, out of an abundance of caution, this portion of this decision is styled as a Report and Recommendation to the district judge.

The analysis contained in this decision – specifically, that concerning plaintiff's exemption from Title VII coverage based on the definition of "employee" as contained therein -- would equally apply to the federal claims against Bonilla. Although, as noted, Bonilla appears to have defaulted in this matter, in reviewing an application for entry of default judgment, the Court would be required to examine the legal viability of the claims against him. *J & J Sports Prods., Inc. v. El*

*Coyote Carpau, Inc.,* No. 14-CV-3642 (PKC), 2014 WL 5147629, at *2 (E.D.N.Y. Oct. 14, 2014) ("[a]fter default . . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law"); *see also Taizhou Zhongneng Import & Export Co. v. Koutsobinas,* 509 F. App'x 54, 56 (2d Cir. 2013) (observing that a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant"). Because plaintiff is specifically exempted from coverage as an employee under Title VII, this exemption would preclude the federal claims against Bonilla, rendering an effort to obtain a default judgment on the federal claims futile. Thus, only state law claims would remain against Bonilla as well, further supporting the declination of the exercise of supplemental jurisdiction here.

Thus, it is the recommendation of the undersigned that the Court enter summary judgment as to plaintiff's federal claims against Bonilla, and dismiss the state claim against Bonilla to permit the refiling of such claims in state court.

## CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. the Town's motion for summary judgment with respect to plaintiff's federal claims is granted, while plaintiff's cross-motion for summary judgment is denied;

2. the remaining state court claims against the Town are dismissed without prejudice to refiling in state court within 30 days of the date of this decision.

3. the Clerk is directed to enter judgment in favor of defendant Town of Hempstead.

Furthermore, it is respectfully RECOMMENDED that:

4. the Court enter summary judgment concerning the federal claims against Bonilla; and

5. the remaining state court claims against Bonilla be dismissed without prejudice to refiling in state court within 30 days.

**OBJECTIONS CONCERNING RECOMMENDATIONS**

To the extent that this decision constitutes a Report and Recommendation, a party may file a written objection to such recommendation. Any such written objection must be filed with the Clerk of the Court within fourteen (14) days of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.** *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object)*; Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir.2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.") *cf. Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). This is particularly true, where, as here, a party has been "warned of the consequences of not objecting to the Magistrate's findings." *Mejia, supra*.

SO ORDERED.

Dated: Central Islip, New York
      January 16, 2019

                                                    /s/ Gary R. Brown
                                                    GARY R. BROWN
                                                    United States Magistrate Judge